ST. LOUIS, B. & M. RY. CO. v. HICKS et al.
(Court of Civil Appeals of Texas. San Antonio. June 4, 1913.)

1. CARRIERS (§ 140*)—CARRIAGE OF GOODS—NOTICE TO CONSIGNEE—DILIGENCE.
Under Rev. St. 1895, arts. 323, 324, providing that a railroad company is liable for the loss of goods as a common carrier from the time of shipment until delivered to the consignee, except that, after the railroad company has used due diligence to notify the consignee and the latter does not remove the goods, the carrier is liable only as warehouseman, due diligence in notifying the consignee depends upon the circumstances of the case, the character and amount of the goods shipped, the situation of the consignee, and the custom and business usages of the place.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616; Dec. Dig. § 140.*]

2. CARRIERS (§ 114*)—BILL OF LADING—PROVISIONS FOR NOTICE—VALIDITY.
Where the carrier and shipper contract that the liability as carrier shall terminate 48 hours after notice is given the consignee, and the provisions of the contract are not in conflict with the law, it will govern the relations between the parties, even though it imposes a greater burden upon the carrier than Rev. St. 1895, arts. 323, 324, relating to the same matter.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 608–620; Dec. Dig. § 114.*]

3. CARRIERS (§ 140*)—BILL OF LADING—CONSTRUCTION—"LEGAL HOLIDAY"—SUNDAY.
Under a bill of lading providing that the carrier should be liable only as a warehouseman after 48 hours, "exclusive of legal holidays," have elapsed from the time notice of the arrival of the goods was given or sent to the consignee, the term "legal holidays" is not restricted to statutory holidays, but includes Sundays as well, since a holiday at common law was a consecrated day; a religious festival; a day on which the ordinary occupations are suspended; and Sunday became a legal holiday by the adoption of the common law as the basic law of the state.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616; Dec. Dig. § 140.*
For other definitions, see Words and Phrases, vol. 5, pp. 4064, 4065; vol. 8, p. 7704.]

4. CARRIERS (§ 51*)—BILL OF LADING—CONSTRUCTION—IMPLICATION AGAINST CARRIER.
A clause inserted in a bill of lading by the carrier for its own benefit must be taken to have meant all that the words implied.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 148, 149; Dec. Dig. § 51.*]

5. CARRIERS (§ 85*) — BILL OF LADING — CONSTRUCTION — NOTICE — "GIVEN" — "SENT."
Under a provision of a bill of lading making a carrier liable only as warehouseman after 48 hours after notice has been sent or given the consignee, a notice by mail is "given" only when it is delivered, and, when the consignee is in the town to which the goods were shipped and is well known to carrier's agents and equipped with modern means of communication, a notice posted and not delivered until two days thereafter will not be construed to have been "sent" so as to limit the carrier's liability from the time of mailing.
[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 316–321; Dec. Dig. § 85.*
For other definitions, see Words and Phrases, vol. 4, pp. 3099, 3100; vol. 8, p. 7671.]

6. CONTRACTS (§ 155*)—CONSTRUCTION—PARTY WRITING CONTRACTS.
A contract must be construed most strongly against the one who wrote it.
[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

**7. CONTRACTS (§ 169\*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES.**

Contracts that are not self-explanatory must be construed in the light of reason and of the surrounding circumstances shown by the evidence.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. § 169.\*]

Appeal from Cameron County Court; E. H. Goodrich, Judge.

Action by F. I. Hicks and another against the St. Louis, Brownsville & Mexico Railway Company. Judgment for the plaintiffs, and defendant appeals. Affirmed.

Claude Pollard, of Kingsville, Jones, West, West & Dancy, of Brownsville, and Zeb V. Nixon, of Kingsville, for appellant. Rich & Searle, of Brownsville, for appellees.

TALIAFERRO, J. This case originated in the justice court, where appellees sued appellant railway company for $160.01 damages for loss of goods destroyed by fire while in appellant's depot at Brownsville, Tex. Judgment in the justice and county court was for plaintiffs, and the railway company appeals. The case comes here upon an agreed statement of facts, which is adopted here and is as follows: "On July 18, 1911, the E. T. Barnum Wire & Iron Works of Springfield, Ohio, delivered in proper condition to the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company certain hardware billed at Hicks Hardware Company, plaintiffs herein, at Brownsville, Tex., and said railway company issued to said E. T. Barnum Wire & Iron Works for plaintiffs a through bill of lading from Springfield, Ohio, to Brownsville, Tex., covering said hardware, and delivered the same to said E. T. Barnum Wire & Iron Works. That said hardware reached Brownsville, Tex., over the lines of the defendant, St. Louis, Brownsville & Mexico Railway Company on July 27, 1911, and was promptly handled from the car and stored by said railway company, defendant, in its warehouse in Brownsville, Tex., and that notice of its arrival properly addressed to the plaintiffs at Brownsville, Tex., was written and placed in the United States mail, proper postage prepaid, at Brownsville, Tex., on said date. That said notice was received by due course of United States mail by the plaintiffs in Brownsville, Tex. (Brownsville, Tex., being their residence and place of business), about 9 o'clock a. m. on July 29, 1911, that being the first notice plaintiffs had of the arrival of said goods; and that about 5 o'clock a. m. on August 1, 1911, being before daylight, the defendant railway company's warehouse and contents, including the hardware of plaintiffs, was totally destroyed by fire. That between the time of receiving the notice of the arrival of said goods on July 29, 1911, and the time same was destroyed by fire, it was not convenient for the plaintiffs to take out said goods from defendant's depot. The bill of lading, or contract, under which said goods were transported from Springfield, Ohio, to Brownsville, Tex., and under which the defendant St. Louis, Brownsville, & Mexico Railway Company was holding same at the time of their destruction by fire, contains among other things the following provision: 'For loss, damage or delay caused by fire, occurring after forty-eight hours (exclusive of legal holidays), after notice of the arrival of the property at destination, or at port of export (if intended for export), has been duly sent or given, the carrier's liability shall be that of a warehouseman only.' That the property at the time of its destruction was the property of the plaintiffs and of the reasonable market value in Brownsville, Tex., on the day of its destruction, to wit, August 1, 1911, of $160.01. That plaintiffs had given defendant no instruction with reference to said property prior to its destruction; neither had there ever been any agreement between plaintiffs and defendant with reference to this or any shipment as to the mode or manner through or by which the defendant should give plaintiffs notice of the arrival of any of their goods in Brownsville, Tex. No notice of the arrival or storage of the goods in controversy was posted on the depot door as provided in article 6590, Revised Civil Statutes of Texas, 1911, prior to their destruction by fire. It was and is agreed that more than 48 hours had elapsed from the time the defendant railway company deposited in the United States post office the notice of the arrival of goods in controversy, Sunday, July 30, 1911, excluded, but that less than 48 hours had expired after the plaintiffs received said notice and before the property was destroyed by fire, Sunday, July 30, 1911, excluded. It was further proven that the defendant was and is a railway corporation handling freight and passengers as a common carrier for hire in Texas, at all the times from the time it received the goods in controversy to and including the time that the goods were destroyed by fire." It was further agreed between the parties "that if at the time of destruction of said goods by fire that defendant railway company was a warehouseman or a bailee for hire and not a common carrier as to said goods, it exercised such care referring to said goods as would relieve it from liability for their value; but if at the time of the destruction of said goods by fire the defendant railway company was a common carrier as to said goods, then it is liable to plaintiffs for the value of said goods."

[1] A railroad company, by statute, is liable, as a common carrier, for loss of or damage to goods intrusted to it for transportation from the commencement of the journey until the goods are delivered to the consignee at the point of destination, except

that if at the point of destination such carrier shall use due diligence to notify the consignee, and the goods are not taken by the consignee, and have, in consequence, to be stored in the depots or warehouse of the carrier, it shall thereafter only be liable as a warehouseman. Articles 323 and 324, R. S. 1895. What in such cases is due diligence on the part of the carrier has been held by our courts to depend upon the circumstances of the case, the character and amount of the goods, and the situation of the consignee with reference to his remoteness from the point of destination as well as upon the customs and business usages of the place.

[2] Whether the notice received by appellee in this case was reasonable, and whether the appellee acted with due diligence, however, becomes immaterial, because the period of notice by appellant and the diligence required of appellee are both fixed by the contract of shipment at 48 hours after "notice has been sent or given." This contract of appellant may impose upon it a greater burden than that which is fixed by the statute, but if it saw fit to stipulate the character and time of notice that it should give before its quality of warehouseman attached, and if the provisions of the contract be not in conflict with the law, they are enforceable and will govern the relation between the parties.

[3] The time specified in this contract was 48 hours after notice "sent or given" exclusive of "legal holidays." The goods arrived at destination on July 27th, and notice was at once sent to the consignee by post card through the United States mails properly stamped and addressed. The notice was not received by consignee until 9 a. m. on the 29th, which was Saturday. The fire occurred on Tuesday at 4 o'clock a. m. Between 9 a. m. Saturday and 4 a. m. Tuesday 48 hours did not intervene unless Sunday be included in the time. which cannot be done because Sunday is a legal holiday. A holiday is defined: "A consecrated day; a religious festival; a day on which the ordinary occupations are suspended." Cyc. 21, p. 440. It is a dies non juridicus. In its derivation it is a holy day. Sunday, since the beginning of the Christian Era, has been recognized and enforced by all Christian nations as a holy day, a day of rest, recreation, and cessation from labor. It was the first of the Christian holidays, and other days of rest, as they were established by law or custom, were called at common law "feast or festival days." Sunday was the most sacred, and other feast days or holidays in later years, created by law, have been made to partake in part only of the quality of Sunday. In the adoption of the common. law as the basic law of this state, Sunday became a legal holiday. without special statutory designation. There can be no holidays in the state but "legal holidays," and to say that Sunday is not a holiday because it has not been so expressly declared by statute would be ignoring the fundamental principles of our law. It has been said that "in the present conventional meaning Sunday can scarcely be called a holiday"; but the learned judge who so wrote had under consideration the validity of a legal process issued upon a statutory holiday. His intent clearly was to emphasize the solemnity of the Sunday as a day of rest and retirement from labor, and not to differentiate it from holidays in reference to matters of contract and business relations. He said: "The statutory declaration that these days shall be legal holidays does not indicate an intent to assimilate their status to that of Sunday. 'Holiday,' in its present conventional meaning, is scarcely applicable to Sunday. Phillips v. Innes, 4 Clark & F. 234. It is applicable to all and has long been applied to some of the days named. When the statute declares them to be legal holidays, it does not permit a reference to the legal status of Sunday to discover its meaning; for it proceeds to interpret the phrase, so far as it is prohibitory, by an express enactment declaring what shall not be done thereon. What it thus expresses is prohibited; what it fails to prohibit remains lawful to be done. The plain intent of the statute, therefore, is to free all persons, upon the days named, from compulsory labor, and from compulsory attendance upon courts, as officers, suitors, or witnesses. Its true interpretation will limit the prohibition, with respect to the courts, to such actual sessions thereof as would require such attendance. Glenn v. Eddy, 51 N. J. Law, 255 [17 Atl. 145, 14 Am. St. Rep. 684]." Spalding v. Bernhard, 76 Wis. 372, 44 N. W. 644, 7 L. R. A. 423, 20 Am. St. Rep. 78.

[4] The clause in the shipping contract in this case was inserted by the carrier for its own benefit and in its construction must be taken to have meant all that the words imply. It cannot be held that in using the words "legal holidays" it intended to limit the meaning to *statutory holidays*, and exclude a day which was a holiday at common law before the state of Texas or the continent of America was known to be a part of the world. Furthermore, to so hold would be to say that a railway company can by contract require a consignee to remove his goods from its depot at a time when it has the legal right to refuse to permit him to enter its depot for the purpose of removing them. No such meaning can be given to a contract made by rational people, and especially can it not be applied to a contract prepared by one of the contracting parties, in the writing of which the other has no voice.

[5] We reach then the remaining question of notice, the decision of which presents serious difficulties. What construction is to be applied to that portion of the shipping agreement which provides that the carrier shall be liable only as warehouseman after it has

"sent or given" 48 hours' notice of the arrival of the goods?

[6] Bearing in mind the rule that a contract must be construed most strongly against the one who wrote it, we must determine whether the mere mailing of a notice is the "sending or giving" thereof within the meaning of this contract. There is no doubt that notice mailed and received is sufficient notice at law; such notice being considered given at the time of its delivery and not when it is mailed. But, in view of the word "sent," in the present contract, the application is not easy. We must start upon the premises in this case that the word "sent" contemplated "delivery." Otherwise the terms of the contract would open a door for fraud which would render the contract void and which we cannot assume that the carrier intended. There are many ways by which a notice may be sent. The surest and most expeditious way should be adopted by the carrier. If it chooses the means of the United States mails, it must assume the burden of delays and miscarriage in the mails. If a notice so sent should arrive at the address of the consignee and he be absent or the notice should be there lost or destroyed so that he did not receive it, then the carrier would have performed its duty. If the address of the consignee were not given and the carrier, after reasonable diligence, could not learn his whereabouts and addressed the notice by mail to the "General Delivery" and the consignee failed promptly to receive it, the carrier would be acquit of responsibility as such. But, as in this case, where the consignee was in the town where the goods arrived well known to the carrier's agents and equipped with modern means of communication, it is not reasonable to say that a notice posted in the mail and not delivered until two days later is notice "sent" which will be conclusive of the consignee's rights from the hours it was mailed.

[7] Contracts that are not self-explanatory must be construed in the light of reason and the surrounding circumstances shown by the evidence. And so we construe this one, that appellee's notice dated from the time it was received, and, 48 hours not having elapsed between its receipt and the destruction of the goods by fire, the railway held the goods, not as a warehouseman, but as a carrier and was liable as such.

The judgment of the lower court is affirmed.