CEREAL PRODUCTS COMPANY, Plaintiff, *v.* DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Defendant.

First Department, November 18, 1921.

**Holidays — Sunday is legal holiday — Sunday excluded as "legal holiday" in computing period under uniform bill of lading after which carrier's liability terminated.**

Sunday, in this and most jurisdictions, always has been deemed a legal holiday and all work thereon, with certain exceptions, has been prohibited.

Hence, an intervening Sunday will be excluded in the computation of time under section 5 of a uniform bill of lading which provides that freight not moved within forty-eight hours, exclusive of legal holidays, after due notice of its arrival, may be kept by the carrier as therein provided subject to its "responsibility as warehouseman only."

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Walter J. Rose,* for the plaintiff.

*John E. Morrissey,* for the defendant.

LAUGHLIN, J.:

The point presented for decision by this submission is as to whether Sunday is a *legal holiday* within the purview of sections 1 and 5 of the conditions forming a part of the " Uniform Bill of Lading-Standard Form of Order Bill of Lading adopted by carriers in official classification territory effective January 1, 1916," approved by the Interstate Commerce Commission and filed with it by the various common carriers engaged in interstate commerce in the United States.

Said section 1, so far as here material, provides, in effect that the carrier or party in possession of the property described in the bill of lading "shall be liable for any loss thereof or damage thereto, except as" thereinafter provided. The only exception here in point is as follows: "For loss, damage or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only." Section 5 provides, among other things, that freight not removed within forty-eight hours, exclusive of legal holidays, after due notice of its arrival, may be kept by the carrier as therein provided subject to its "responsibility as warehouseman only."

On the 28th day of February, 1920, the Chicago and North-western Railway Company received at Monitowoc, Wis., 740 bags of malt consigned to the order of the plaintiff at Weehawken, N. J., with directions to notify A. S. Herrmann at 117 East Eighteenth street, New York city, "care U. S. & Brazil Steamship Line, New York, for export — lighterage free," and issued a bill of lading in the form stated, routing the shipment over its own line and that of the defendant. In due course, the malt was received by the defendant and transported over its line to Weehawken and on its arrival there, Herrmann was duly notified and he indorsed the bill of lading to the United States Forwarding Company, which duly ordered the delivery of the malt to the steamer *Hallfried* in Brooklyn. The plaintiff by an assignment has succeeded to the rights of the United States Forwarding Company. The defendant transferred the malt to a lighter which arrived alongside the steamer on Friday, the 16th of April, 1920, at twelve-fifteen P. M. and at two o'clock that day the captain of the lighter delivered the manifest and shipping permits to the receiving agent of the steamship line. The submission shows that it then became the duty of the steamship company to unload the malt from the lighter and stow the same aboard the steamship. On Monday, April nineteenth, at twelve-five P. M., while the lighter was still alongside the steamship and before the malt had been transferred to it, a fire broke out on the steamship and was communicated to the lighter and the malt

was damaged through no fault of the steamship company. Thereafter, on due notice to the plaintiff, defendant sold the damaged malt for $1,675.88, which was the best price obtainable. The value of the malt before having been damaged was $4,070, and for that amount plaintiff demands judgment. The defendant concedes its liability only to the extent of the amount received on selling the damaged malt. It is submitted to this court to direct the proper judgment, without costs.

Plaintiff claims that the intervening Sunday is to be excluded in computing the forty-eight hours after which the carrier's liability terminated. If that contention be sustained, concededly the malt was damaged within the forty-eight hours, but if Sunday is not to be excluded, then the malt was not damaged until after the expiration of the forty-eight hours and the defendant is not liable.

Defendant's claim that Sunday is not a legal holiday is predicated principally upon the statutory law of this State with respect to holidays, which does not expressly include Sundays (See Gen. Constr. Law, § 24, as amd. by Laws of 1909, chap. 112), but recognizes that all Sundays are holidays by providing that if a statutory holiday falls on Sunday, the next day will be observed as the statutory holiday. It is to be borne in mind, however, that the uniform bill of lading was prepared for use throughout the United States and, therefore, its provisions are not to be construed in the light of the *statutory* law of any particular State. The Legislature of this State left the status of Sunday a sanctified holiday as it existed at common law (See Pub. Off. Law, § 62; 25 R. C. L. 1413; 2 Bouvier Law Dict. [3d rev.] 1446; Webster Internat. Dict. 1025; *Paige* v. *Shainwald*, 169 N. Y. 246; *Didsbury* v. *Van Tassell*, 56 Hun, 423, 426.) In *Brunnett* v. *Clark* (1 Sheld. 500), SMITH, J., said: " The observance of Sunday, and abstinence from secular pursuits on that day, was enforced by law in England, from the earliest times, even before the Norman conquest. In this State, while yet a colony, statutes were enacted for the same purpose, and they have always been in force since the formation of our State government. Similar statutes exist in most, if not in all, of the States of the Union, and thus throughout the land, Sunday, originally established as a day

of rest and religious worship, has become a civil institution, to be observed by courts, public officers, and private citizens, as prescribed by the statutes." In *Lindenmuller* v. *People* (33 Barb. 568), in discussing the status of Sunday, the court said: "With us, the Sabbath as a civil institution is older than the government. The framers of the first Constitution found it in existence; they recognized it in their acts and they did not abolish it, or alter it, or lessen its sanctions or the obligations of the people to observe it. But if this had not been so, the civil government might have established it. It is a law of our nature that one day in seven must be observed as a day of relaxation and refreshment, if not for public worship. Experience has shown that the observance of one day in seven as a day of rest 'is of admirable service to a State, considered merely as a civil institution.' (4 Bl. Com. 63). * * * The Christian Sabbath is, then, one of the civil institutions of the State, and to which the business and duties of life are, by the common law, made to conform and adapt themselves." Sunday has, therefore, in this jurisdiction and in most jurisdictions always been deemed a legal holiday and all work thereon, with certain exceptions not here in point, has been prohibited. (See *Rigney* v. *White*, 4 Daly, 400.) The purpose in excluding legal holidays applies with greater force to Sunday than to other holidays, for ordinarily such work may be done on a statutory holiday, but may not be done on Sunday. (See Penal Law, § 2143; 15 Am. & Eng. Ency. of Law [2d ed.], 512; 27 id. 388; *Page* v. *Shainwald, supra.*) So far as we have found, the only reported decisions construing these provisions on this point are *Hussa Brewing Co.* v. *Chicago & N. W. R. Co.* (151 Wis. 666; 139 N. W. Rep. 415) and *St. Louis B. & M. Ry. Co.* v. *Hicks* (158 S. W. Rep. 192), and in both of them it was held that Sunday was excluded. It follows that the plaintiff is entitled to judgment for $4,070, but without costs.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment ordered for plaintiff for $4,070, without costs. Settle order on notice.