JOHN GLENN, TRUSTEE, &c., v. SAMUEL EDDY.

A summons in an action in this court will not be quashed, nor will its service be set aside, because it was issued, tested and served by the sheriff on one of the days made legal holidays by the provisions of the act of June 1st, 1886. *Rev. Sup.* 361.

Motions to quash summons, or to set aside the service thereof.

Argued at November Term, 1888, before Justices DEPUE, DIXON and MAGIE.

For the motions, *Alfred Mills.*

*Contra, Samuel H. Grey.*

The opinion of the court was delivered by

MAGIE, J. The summons in this case was issued, tested and served by the sheriff on a day upon which a general election for members of assembly was held. It is now contended that the writ is a nullity, or the service thereof ineffective.

This contention is founded on the provisions of the "Act establishing legal holidays, and regulating the maturity of commercial paper with respect thereto," passed June 1st, 1886. *Rev. Sup., p.* 361. It is thereby enacted that certain days (among which is included the "day upon which a general election shall be held for members of assembly") shall be legal holidays, " and no court shall be held upon said days, except in the cases where said court would now sit upon a Sunday, and no person shall be compelled to labor upon any of said days by any person or corporation." The argument is, that each of the days named has thus been made *dies non juridicus ;* that upon Sunday (previously the only non-juridical day) certain legal acts were invalid, and that upon these newly made non-juridical days the same acts are equally. inefficacious.

The legal *status* of Sunday depends upon the provisions both of the common law and statutes. It seems that courts in a remote antiquity held their sessions upon Sunday, as on other days. The practice ceased, apparently, because prohibited by church canons. The prohibition became part of the common law and courts ceased to sit on Sunday, except constrained by necessity, as for the reception of the verdict of a jury. The maxim then used, *Dies Dominicus non juridicus,* was the accepted rule. Yet the issuing and even service of writs would not seem to have been prohibited before 29 *Car. II., c.* 7, which not only forbade worldly employment and business, but expressly prohibited the service of writs on Sunday. Writs always were made returnable to the regular return days, many of which fell on Sunday, and such writs and notices to appear on such days were held not objectionable, the business being transacted, in fact, on the following day. *Swan* v. *Broome,* 1 *Bl.* 496; *S. C., Id.* 526; *S. C.,* 3 *Burr.* 1595.

In New Jersey the common law prohibition against the sessions of judicial tribunals (except in cases of necessity) has always been recognized. From an early period, however, writs were returnable to stated terms of the courts, which commenced on days other than Sunday. When the courts were afterward thrown open for the return of writs, Sunday was expressly excepted. *Prac. Act,* § 41; *Rev., p.* 854. The Vice and Immorality act moreover, also from an early period of our history, not only prohibited worldly employment and business, but many amusements and diversions on Sunday, and coupled therewith an express prohibition of the service of writs and process on that day. *Rev., p.* 1227. Other enactments have from time to time restricted or prohibited the performance on Sunday of acts at other times lawful.

The history of the common law and of legislation with respect to Sunday clearly indicates that it owes its exceptional position to a general sense of its sacred character as a *holy* day. To no other day—although many account other days holy—has a like distinction been accorded.

When we compare the course of the common law and legislation respecting Sunday with the statute now before us, a different treatment is observable. Although some of the days named are accounted holy by many, while others are national anniversaries, or days when public duties are enjoined on citizens, yet there has been enacted no prohibition against the pursuit of any business or pleasure. There is no express prohibition against the service of the process of the courts. The direct prohibitions of the statute are aimed at only two things, viz.: (1) compulsion to labor, and (2) the holding of courts on the days specified.

The statutory declaration that these days shall be legal holidays does not indicate an intent to assimilate their *status* to that of Sunday. " Holiday," in its present conventional meaning, is scarcely applicable to Sunday. *Phillips* v. *Innes*, 4 *Cl. & F.* 234. It is applicable to all, and has long been applied to some of the days named. When the statute declares them to be legal holidays it does not permit a reference to the legal *status* of Sunday to discover its meaning. For it proceeds to interpret the phrase, so far as it is prohibitory, by an express enactment declaring what shall not be done thereon. What it thus expresses is prohibited ; what it fails to prohibit remains lawful to be done.

The plain intent of the statute, therefore, is to free all persons, upon the days named, from compulsory labor and from compulsory attendance upon courts, as officers, suitors or witnesses. Its true interpretation will limit the prohibition with respect to the courts to such actual sessions thereof as would require such attendance.

This view is not out of harmony with the case of *Wilson* v. *Bayley*, 13 *Vroom* 132, where this court excluded affidavits taken under a rule, because taken on one of the days named in this statute. The commissioner, in taking such affidavits, was exerting a compulsory power to compel attendance of suitors and witnesses, derived from the court. His sitting was therefore that of a branch of the court, and was, in my judgment, within both the spirit and letter of the prohibition.

The view above taken of this legislation has the sanction of the Court of Chancery. *Kinney* v. *Emery,* 10 *Stew. Eq.* 339. See, also, *McEvoy* v. *Trustees,* 11 *Id.* 420.

But it is insisted that even on this construction of the statute the writ was not valid. The claim is that the summons is a judicial writ, to support which it must be presumed that it was awarded by a court in session, and since the court could not legally have been in actual session on the day of its *teste,* that presumption must fail.

Upon such reasoning the Supreme Court of New York held that a writ issued upon Sunday could not be sustained. *Van Vechten* v. *Paddock,* 12 *Johns.* 178. The Supreme Court of Massachusetts declared this to be the carrying of a presumption or fiction of law to a great length. *Johnson* v. *Day,* 17 *Pick.* 106.

. To support this contention, resort must be had to the theory of an "original writ" and the distinction between it and process issued thereon, the issuing of which was deemed to be judicial in its nature, and such process was so called a "judicial writ."

For myself, I should find it impossible to hold that judicial consideration is to be given, and solemn adjudications are to be made, at this day, upon the basis of fictions so transparent and so entirely devoid of the least influence on the mode of bringing parties before a court or the merits of the controversy between them. In our practice, a summons is a first process, and so far as the record shows, the foundation of the action. To hold that the legal eye must discern an original writ underlying and supporting the suit—a writ absolutely fictitious—seems to me to border on the absurd. Nor does it seem less absurd to hold that such a summons, well known to be issued and sealed invariably by officers of the court, without the least semblance of judicial action, yet owes its validity to the fiction that such action has taken place.

· But if these fictions are so interwoven with our system as not to be eradicable by the courts, I cannot attribute to them sufficient force to overthrow this writ. If viewed as a judi-

cial writ, the issuing of this summons required no actual session of the court. The fictitious session and action of the court is sufficient. The legislation in question is aimed at such actual sessions of courts as will compel the attendance of parties, jurors and witnesses. It may and should, therefore, be interpreted as not interfering with the fictitious sessions alone necessary to support such writs.

It is further insisted that the issue and service of the summons by the officers was prohibited. The act, however, does not prohibit labor or service, but only the compelling of labor or service. Any person may refuse and may not be compelled to work. Any person, officers of courts or others, may work if they choose.

It is also urged that the service of the writ did exert a compulsion on the defendant. But no act was required and none could have been performed by him under the summons on that day. He was left free to exercise his franchise, if he was a voter. Even if the summons had been returnable on that day, under our practice, no injurious result could befall defendant. This objection cannot avail. *Kinney* v. *Emery, ubi supra.*

A statute in Michigan prohibiting the holding of courts on certain days has been held not to avoid a summons issued on one of them. *Smith* v. *Ihling,* 47 *Mich.* 614. An act in Texas declaring certain days to be holidays was held not to prohibit courts from sitting on those days. *Dunlap* v. *State,* 9 *Tex. App.* 179.

The motions should be denied.