9676

BEAUFORT COUNTY LUMBER CO v. JOHNSON *ET AL.*

(92 S. E. 271.)

1. LOGS AND LOGGING — SALES AND CONVEYANCES OF STANDING TIMBER — fering with it in cutting and removing timber under a contract providing that the original seller covenanted with the original buyer and his assigns (plaintiff) that the latter should have ten years from date to cut and remove the timber, and, upon payment .of interest upon the purchase price at 6 per cent. per annum, payable at the end of each calendar year, such additional period as might be desired, not exceeding ten years.   *Held,* that a decree for plaintiff would be affirmed.

2. TIME—CALENDAR YEAR.—A calendar year is the period in which the revolution of the earth around the sun, and the accompanying changes in the order of nature are completed.

3. LOGS AND LOGGING—SALES AND CONVEYANCES OF STANDING TIMBER— OPTION FOR EXTENSION OF TIME.—Contract construed to provide for

extension of time, from year to year, at option of grantee, not exceeding ten years, for removal of timber.

(Per CHIEF JUSTICE GARY and MR. JUSTICE HYDRICK.)

4. LOGS AND LOGGING—SALES AND CONVEYANCES OF STANDING TIMBER—EXTENSION OF TIME.—Contract construed to require grantee of timber rights to notify grantor before expiration of original period granted, of additional period, not exceeding ten years, desired under option for extension of time for removal of timber.

(Per JUSTICES WATTS and GAGE.)

5. ESTOPPEL—CONTRACTS.—Where a contract provided for an extension of time, the acceptance of a consideration for annual extensions from year to year estops the grantor from refusing subsequent extensions during the optional period.

(Per MR. JUSTICE FRASER.)

Before MAULDIN, J., Dillon, December, 1915.   Affirmed.

Action by the Beaufort County Lumber Company against Ivey Johnson and D. S. Hyatt. From a decree for plaintiff, defendants appeal.

The decree of the trial Court is as follows:

The above entitled suit was heard by me at the October, 1915, term of Court of Common Pleas for Dillon county, which suit was begun on or about the —— day of April, 1915, for the purpose of having the defendants permanently enjoined from interfering with plaintiff's right in certain timber conveyed by Joseph J. Bethea to Powell & Thomas on February 19, 1903, and by Powell & Thomas conveyed to plaintiff. The deed provided that the purchaser or his assigns should have the full period of ten years from date of the contract in which to cut and remove the timber, and, upon the payment of 6 per cent. annually upon the purchase price, such additional period of time as may be desired, not exceeding ten years. The original period expired on February 19, 1913, and the contention of the defendant is:

1. That the period of extension is in the nature of an option, and, in order for the plaintiff to take advantage of it, it is necessary that before the expiration of the original ten-

year period the plaintiff should have given to the defendant notice of what additional time it would require so that the contract might become fixed and definite.

2. That the consideration originally paid for the timber was so small that it would be inequitable for the Court to require a compliance by the defendant with its option.

3. That, because of the fact that the plaintiff did not tender 6 per cent. upon the purchase price before the 31st day of December, 1914, it had failed to comply with the provisions of the deed requiring payment at the end of the calendar year, and hence its rights were forfeited.

Taking up these questions I shall dispose of them in the order set forth.

Question 1. The criterion for determining the issue raised in this controversy is laid down by the Court in the case of *Timber Company* v. *Prettyman,* 97 S. C. 247, 81 S. E. 484: "The Court, however, adheres to the principle, well established in this State, that in the construction of a timber deed the intention of the parties controls, provided that intention can be gathered from the 'four corners of the instrument' itself."

So far as I have been able to find, no Court has construed a contract containing the special provisions of the one now under consideration. The question arises: What did the parties have in mind at the time it was signed? It is elementary that, in arriving at the intention of the parties, where the language used is unambiguous, it must be given its plain and usual import. Placing oneself in the position of the parties at the time of the making of the contract, unquestionably it was contemplated that as a consideration of the purchase price the purchaser should have the easements mentioned in the deed and the right without any further consideration to cut and remove the timber within ten years. It, however, occurred to them that, perhaps because of circumstances over which they had no control, or for other reasons, the purchaser might not be able to remove the timber within

the time mentioned. Ten years was in ordinary contemplation all the time that should be needed and such period as should be required without further compensation to the grantor. If more than ten years was required, then the grantor felt that he should have some additional compensation. To provide for this contingency the parties made an additional agreement, to wit, that if the timber was not removed in the original ten years, then by the payment of 6 per cent. upon the purchase price the purchaser could have such additional period after the ten years as might be desired, but in no event could he have more than the additional ten years. If the purchaser did not need the whole of that period in addition to the original ten years, then he could use such part of it as he desired upon the conditions mentioned, and the minute he failed to pay annual stipulation the rights that he acquired under the contract were forfeited. Certainly neither party had in contemplation at the time the contract was signed that before the expiration of the original ten years the purchaser should give notice of what part of the additional period is required, for it would be just as impossible at that time to fix an absolute definite period as it was at the beginning, for the reason that neither party could know what contingencies might arise, and the contract was made as definite in the beginning as it was possible for contracts of this nature to be made. As was said by the Court in the Prettyman case, above referred to: "At the time the deed was executed, the owner of the fee had the right to convey the timber without any specification as to time whatever. I see no·reason why she could not sell the timber with the right to remove it within a definite time, and at the same time convey the privilege or option of an extension to be determined by the grantee, upon the condition that he should pay a specific sum annually in advance."

So in the case at bar there was no reason why the grantor could not make a deed conveying the right to remove the timber within a definite time and at the same time fixing an

optional period, which could be taken advantage of upon complying with the conditions mentioned therein. The language used in *Minshew* v. *Lumber Co.,* 98 S. C. 8, 81 S. E. 1027, is not at variance with this position. In that case the deed provided that the purchaser should have a period of five years from the time he began cutting and removing the timber in which to cut and remove same, which time might be extended from year to year thereafter by payment of 6 per cent. per annum on the purchase price. This contract as to extension and as to the time within which to begin cutting and removing was indefinite, and all that the Court holds or suggests in the opinion in that case is that the purchaser should take such action as would make his contract definite; for the Court says: "If the defendant had commenced to cut and remove timber and needed additional time, it was * * * incumbent to tender in advance the 6 per cent. of the purchase price agreed upon, and give notice of the number of years required, and offer to pay in advance * * * the 6 per cent. of purchase price, in order that the extended time might be fixed, definite, and determined, and each party know what to rely on as to whether extension of time claimed in the absence of an agreement fixing the time could have been determined."

The idea running through all of the decisions of the Court in this State from the Flagler case in 89 S. C. 328, 71 S. E. 849, through the case of *Gray* v. *Marion County Lumber Co.,* 102 S. C. 289, 86 S. E. 640, is that a construction must be placed on indefinite contracts so that they may become as far as possible definite. Where the contract is definite there is no room for construction of interpretation; for the Court has held repeatedly that it will not make new contracts for parties. In the Gray case the contract was identical with that in the Minshew case, except that a longer period was given in which to cut and remove. According to the facts proved in that case, fourteen years had elapsed between the date of the conveyance and the commencement of the suit

without any action on the part of the grantees looking to the preservation of their rights under the deed. The Court held that such a length of time was unreasonable, and that by the laches of the grantees their rights therein were forfeited. In the course of the opinion the Court, however, used this language, which is the principle which should be a guide in interpreting contracts: "But the Court must enforce the contract as made and performed by the parties and declare their rights accordingly, and not as they should have made it or exercised their rights under it."

Under the contract being considered at present, if the parties had contemplated that notice should be given of such additional time as might be required, the contract would unquestionably have so provided; for the parties in making the contract unquestionably considered how additional time should be acquired and a limit was fixed upon the additional time that would be granted. Unquestionably the language used shows that the parties had in contemplation an exten-vides that payment for such extension shall be made sion from year to year, not to exceed ten years; for it pro-annually. If a definite period of time had been contemplated, say five years, seven years, or ten years, then unquestionably the payment for such time would have been in a lump sum. The words "period of time" used in the contract must be construed in connection with all of the other provisions of the contract, and when that is done it is easily ascertained what the parties had in mind at the time the words were used. The above construction does not place any burden upon the grantor that he did not contemplate at the time the deed was made, for in no event could the purchaser by any mere notice be bound more than he was under the terms of the contract in question, for, even had notice been given that only five years of the extension period would be required, he could not be compelled to pay for all of that period if he saw fit to surrender his rights under the contract before the expiration of that period. As is said in all of the

cases, the right to the extension period is dependent upon compliance with the provisions terminating it, and the purchaser has the right at any time to forget his interest, and does forfeit it by failing to pay therefor. That the above is the proper construction of the contract is shown by the receipts signed by the defendant, which were offered in evidence. The language used in the first receipt is as follows: "This being the first payment and is intended to secure an extension for one year from the expiration of the original ten-year period, and being the first of the annual extensions, not to exceed a period of ten years, if the said lumber company requires that period." The second receipt contains the same language. True, it is contended in the answer and attempted to be established by the testimony that these receipts were obtained through fraud and misrepresentation. The testimony does not sustain this contention. The first receipt was signed under the following circumstances: Mr. Phillips, the manager of the company, and his assistant, Mr. Calhoun, first went to see the original grantor, Mr. Bethea, for the purpose of paying for the first annual extension. He, however, had disposed of the premises, and the parties were sent to Ivey Johnson, the then owner. He was seen near his home and offered the money, which he refused to accept at that time, stating that he would prefer receiving it at the Bank of Latta. Mr. Smith, the president of the Bank of Latta and a man of unquestionable intelligence and ability, had been handling this transaction for the defendant, Ivey Johnson, had had the title investigated to the property, and had loaned Johnson the money to pay the purchase price of the land. The testimony is somewhat conflicting as to what took place at the bank, but the preponderance of it is to the effect that Johnson and Smith took the receipt, went into the private office in the bank and considered it for some time, when they came out, and Johnson received the money and signed the receipt. Under these circumstances it seems absurd to say that the receipt was obtained by fraud because

of the mere fact that the defendant did not have his glasses. The proof of fair dealing is equally as strong in regard to the second receipt. Mr. Smith, the mortgagee, would unquestionably be much interested in the seeing that his security was enhanced as much as possible, and, I venture to say, would never have received the sum of $90.00, which was afterwards paid to him, if he had not felt that he was constrained under the terms of the contract to accept that amount. To construe the contract otherwise would be to violate the obligations thereof and to deprive the plaintiff of its property without just compensation and due process of law in violation of both the State and Federal Constitutions. I therefore find that the contract in question is one definite in its terms and correctly expresses the intention of the parties at the time. This being so, to require plaintiff to give notice before the first ten-year term expired what part of the additional term would be required should be to insert a new provision in the contract, a thing which the Court is powerless to do. This position is therefore not sustained.

Question 2. While it is true that Courts of equity will not require specific performance of inequitable contracts, yet it is true and is an elementary principle that equity abhors forfeitures. In the case of *Cape Fear Lumber Company* v. *Small,* in 84 S. C. 434, 66 S. E. 880, the Court enforced specific performance of a timber contract and option where the sum of only $375.00 was paid for timber on a tract of land containing 750 acres. True, the specific question was not raised in this case as to inadequacy of consideration so far as the opinion shows, but it sustains the principle that, even though the consideration be small, yet if at the time the contract was made it was fair and reasonable, and no one had been misled, then equity will require specific performance. In the case at bar the contract was made in 1903, at a time when it cannot be said that the owners of timber did not have knowledge as to its value. Fifteen hundred dollars was paid as the purchase price there-

for, and the defendant or his grantor has had the use thereof during all these years. The property was purchased by defendant with the knowledge and understanding that the timber had been sold and that the plaintiff had certain rights in connection therewith. He does testify that he did not know of this timber deed until after the purchase, but plaintiff's deed was recorded and was notice to him. Under the testimony here I further find: That at the time of the purchase the consideration was fair and adequate, and that even were such not the case the defendant, Ivey Johnson, would not be in a position to take advantage thereof, for the reason that he purchased only four years ago and for a consideration which had in view the fact that the timber had been sold. At the time of the purchase the grantor sold and the plaintiff purchased an option for ten years' extension under the conditions mentioned in the deed, and under the testimony in this case a Court of equity so long as the provisions of the contract are complied with will prevent forfeiture and sustain plaintiff's rights. This case does not fall under the line of authorities where the Court refuses specific performance because of inadequate consideration or unconscionable contracts.

Question 3. What construction should be placed upon the words "calendar year?" The defendant contends that by reason of the failure of the plaintiff to tender to defendant the 6 per cent. interest before December 31, 1914, it lost any right it might have under the contract for the reason that calendar year should be construed to mean a period beginning with the 1st of January and ending with the 31st day of December. Unquestionably, in speaking of a particular year such as 1492, 1861, or any other specific year, calendar year would mean a period beginning with the 1st day of January and ending with the 31st day of December; in other words, a calendar year is a division of time according to the calendar. There are several modes of measuring time. We have the

lunar year, the fiscal year, the calendar year, and several others that might be mentioned. Unquestionably the writer of the contract in question had in mind the distinguishing of the year in contemplation of the parties from other years. There is nothing in the context to make the construction as contended for by the defendant necessary. The term then should be given its ordinary significance in common parlance. In other words, calendar year should be construed to mean a year as usually spoken of by the Christian nations in the reckoning of time, because it is reckoned by the calendar. According to the calendar a calendar year is 12 months, or 365 days. The proposition seems so self-evident that it is hard to find authority in point. Counsel for defendant cited the case of *Carrol* v. *Wright,* 131 Ga. 728, 63 S. E. 260. Investigation of this case will show that the Court was construing a statute for licenses, and it was found that the context of the statute required an interpretation of the word as a period of time beginning with the 1st day of January and ending with the 31st day of December. The case of *Williamson* v. *Farror,* a South Carolina case, 17 S. C. L. (1 Bailey's Law) 611, 21 Am. Dec. 492, is a case considering calendar months, but is instructive as to the ordinary term. In the course of the opinion it is said: "Twelve months constitute the calendar year, and whenever we speak of a credit of twelve months, we always mean, and are understood to speak of, a credit for the whole calendar year. It would then, on a fair construction, appear that the credit of six months for the first moiety was intended and understood to mean a credit of the first six calendar months of the calendar year, commencing on the 4th of June. * * * As a general rule I would lay it down that in all matters of contract the term 'month' must be understood to mean a calendar month, unless the parties have expressly or obviously intended it to mean lunar."

The case of *Geneva Cooperage Co.* v. *Brown,* 124 Ky. 16, 98 S. W. 279, 124 Am. St. Rep. 388, the Court, in construing

a statute (Ky. St. 1903, sec. 2516) in Kentucky in which the word "year" was used, held that it meant a calendar year, and calendar year in ordinary acceptation is considered to be 365 days, and that it may be computed from any specific date in one year to a like specific date in a subsequent year. All the authorities on the proposition will be found under the word "year" in 40 Cyc. at page 2876; the definition there given being: "The period in which the revolution of the earth around the sun and the accompanying changes in the order of nature are completed; a period of 12 months; 12 calendar months; 365 days. While the meaning of the term must be determined from the connection in which it is used, and from the subject matter with reference to which it is employed, unless from the context or otherwise a different intent is gathered, the word means a calendar year."

There is nothing in the context to require the period contemplated to mean a period ending on the 31st day of December, but the term was used merely for the purpose of distinguishing the year intended from lunar, fiscal or other years. The calendar year, therefore, contemplated by the parties began on February 19, 1914, and ended on February 19, 1915. Therefore any payment of money before February 19, 1915, or a tender thereof was in compliance with the contract. The evidence shows conclusively that the plaintiff made to defendant, after his refusal to accept its check, a legal tender of the 6 per cent. interest on the purchase price before the expiration of the calendar year, and that upon his refusal to accept such tender that it deposited same with the clerk of Court, making the same a continuing tender. Therefore its rights have not been forfeited under the contract.

Another reason why the defendant's contention cannot be sustained is that the contract provides that the payment or tender of the 6 per cent. upon the purchase price shall be made at the end of the calendar year in which the original ten-year period expires. Therefore, even conceding for the sake of argument that the words "calendar year" would

mean a period ending December 31st, under the express
terms of the contract the time limit in which the plaintiff
would have to pay the interest would be the 31st day of
December, 1915, and not on the 31st day of December, 1914.

It is therefore ordered, adjudged, and decreed that the
defendants, their agents, servants, and employees, be, and
they are hereby, enjoined and restrained from cutting,
removing, or in any manner interfering with plaintiff in the
use and enjoyment of the timber and other rights granted in
said contract.

Ordered further that, subject to the provisions of said con-
tract, plaintiff has a good and sufficient title to said timber
and the rights and easements in said contract granted.

And it is so ordered.

*Messrs. W. F. Stackhouse* and *J. A. Mace,* for appellants.

*Mr. Mace* cites: *As to construction of calendar year:* 9
Cyc. 578 and 588; 46 N. C. 84; 1 Bailey L. 611; 63 Ga. 260;
122 N. W. 356; 158 Mich. 40; 95 N. E. 664; 84 Ohio St.
172; 68 S. C. 411; 38 Cyc. 310.  *"Upon" defined:* 6 Cowen
582; 58 Atl. 870; 75 N. H. 6; 128 N. W. 305; 21 N. D. 64.
*Construction of timber contract:* 89 S. C. 328; 95 S. C. 352;
97 S. C. 247; 98 S. C. 8; 102 S. C. 287.  *Time essence of
contract:* 39 Cyc. 1241.

*Mr. Stackhouse* cites, also: *Construction of deed:* 90 S. C.
176; 97 S. C. 247, 250, 252; 98 S. C. 22; 84 S. C. 265; 93
S. C. 16; Bispham Eq. 377; 10 Wall. 339.

*Messrs. Gibson & Muller,* for respondent, cite: 229 Fed.
652.

April 30, 1917.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an action to enjoin the defendants from cutting and removing certain timber under the contract described in the pleadings.    The facts are fully stated in the decree of his Honor, the presiding Judge, which will be reported.

The questions involved arise principally out of the following provision of the contract:

"The said party of the first part, for himself and his heirs, executors, administrators, and assigns, further covenants to and with the said parties of the second part, their heirs, executors, administrators, and assigns, that the said parties of the second part, their heirs, executors, administrators, and assigns, shall have the full term or period of ten years from the date hereof to cut and remove said timber, and upon payment of interest upon the purchase price hereinabove stated, at the rate of 6 per cent. per annum, payable at the end of each calendar year such additional period as may be desired, not exceeding ten years."

While the exceptions are numerous, there are practically but two assignments of error.

The first question that will be considered is whether there was error on the part of his Honor, the Circuit Judge, in his construction of the words "calendar year," as used in said contract.    We do not deem it necessary to add anything to the language of the Circuit Judge in disposing of this question, and the decree in this respect is affirmed, for the reasons therein stated.

The next question is whether there was error on the part of the Circuit Judge in ruling that the right of the plaintiff to an extension of time was not forfeited by reason of the fact that it failed to notify the defendants that it desired an additional period for cutting and removing the timber, which extension of time, it is contended, should have been specified when the notice was given.    It seems that *Minshew* v. *Lumber Corporation,* 98 S. C. 8, 81 S. E. 1027, is the principal case relied upon to show such error.    In *Gray* v. *Lumber Co.,* 102 S. C. 289,

86 S. E. 640, the case of *Minshew* v. *Lumber Corporation* is thus construed by the Court:

"In Minshew's case the contract provided that the time limit should be five years from the time the grantee began cutting and removing the timber, but that it might be extended from year to year thereafter upon the payment of interest at 6 per centum per annum on the purchase price. It was held, *inter alia,* that the grant being silent as to when the cutting should begin, the law implied that it should begin within a reasonable time; that no general rule could be laid down as to what would be a reasonable time in all cases, but that must be determined upon the facts and circumstances of each case; * * * that the right granted was of a terminable nature, and was terminated by the failure to begin cutting the timber within a reasonable time; that to obtain the benefit of an option for an extension of the time the grantee must, before the time expires, pay or tender, yearly in advance, the agreed interest on the purchase price according to the terms of the contract, and this because, after a reasonable time has elapsed, and the right has terminated, it cannot be revived by a mere offer to comply with the option for an extension."

Reference to the Minshew case will show that the question under consideration was not involved in that case. The case in which the facts were more nearly similar to those in the present case than any other is the case of *Timber Co*. v. *Prettyman & Sons,* 97 S. C. 247, 81 S. E. 484; the only difference being that in the Prettyman case there was no limitation expressed in the contract as to the additional period, while in the present case the additional period was not to exceed ten years. In the Prettyman case it was held that, where a timber deed gave to the grantee ten years in which to cut and remove the timber, and provided that in case the timber was not cut and removed before the expiration of such period, the grantor should have such additional time as it might desire, but that in such event it should, during such extension period, pay interest on the original purchase price annually

in advance, the right to an extension was not dependent upon the condition that the grantee should commence the cutting and removal of the timber within the first ten years, and that under such deed the grantee was entitled to such extension of time for cutting and removing the timber as it desired, and not merely to a reasonable time, since the deed was unambiguous and express. There is no difference in principle between the two cases and those stated by his Honor, the Circuit Judge.

For these reasons, the judgment is affirmed.

MR. JUSTICE HYDRICK concurs in the opinion announced by the CHIEF JUSTICE.

MR. JUSTICE FRASER, *concurring.* I concur with the Chief Justice in result. The original contract provided for an additional period, not periods. The plaintiff, therefore, had the right to only one extension, but in 1912 the defendant received $90.00, which he acknowledged as "being the first of the annual extensions." In 1913 a similar payment is made with the same statement as to "annual extensions." The payment in 1912 was in advance for 1913 and a part of 1914. The payment in 1913 was for the balance of 1914 and up to February 19, 1915. The tender on February 13, 1915, was in time. While the original contract contemplated only one extension, the subsequent written statements (that the extension for ten years should be annual), it seems to me, estops the defendant to deny that the extensions should continue to be annual extensions. I therefore concur in the result.

MR. JUSTICE WATTS, *dissenting.* This is an action brought by the plaintiff-respondent on the 5th day of April, 1915, to restrain the defendants-appellants from cutting and removing certain timber and asking for a decree adjudging that the plaintiff had complied with the contract hereinafter particularly set forth in the answer of the defendant, John-

son.    The case was referred to A. B. Jordan, master, to take the testimony by order dated June 14, 1915, which reference was held on August 10, 1915.    The case was heard before Hon. T. J. Mauldin at the October term, 1915.    The decree of the Circuit Court granted the relief demanded by the plaintiff, whereupon the defendants gave due notice of appeal upon the exceptions set forth in the record.    The exceptions, 20 in number, raise two questions: (1) Whether it. was necessary for the respondent before the original ten-year period expired to give notice to the appellant what additional period of ten years it would desire; (2) and in not finding that the respondent had forfeited its rights by failing to tender the 6 per cent. upon the purchase price before December 31, 1914.    The exceptions raising the second point must be overruled.    The facts in the case show beyond question that the tender was made within the time.    The deed provides "that upon the payment of interest upon the purchase price hereinbefore stated at the rate of 6 per cent. per annum, payable at the end of each calendar year, such additional period as may be desired, not exceeding ten years," may be had. Under the terms of the deed the respondent had until the 19th of February, 1915, to make the payment.    The payment made in December, 1912, extended the deed from February 19, 1913, to February 19, 1914, and the payment made December 16, 1913, extended the time from February 19, 1914, to February 19, 1915.

As to the exception raising the first question: This exception should be sustained, as there was not a compliance with the terms to extend the option as required by law.    The respondent did not give notice that he desired to exercise the right to extend an option which it had beyond the fixed time before its time expired, and give notice that it would pay the amount agreed upon in strict accord with the terms of the agreement of the parties and indicate the number of additional years of additional time needed in order that. the extended time might be deter-

mined definite and fixed so that each party might know what to rely on.

The Court laid down the rule in *Minshew* v. *Atlantic Coast Lumber Corp.*, 98 S. C. 22, 81 S. E. 1207. Had the respondent followed the rule as laid down in that case and notified in. advance the appellant of the additional time needed, and paid as provided for in the agreement and given notice in advance that it would pay as provided for in the agreement, then there would have been no difficulty. This case conclusively decides what is necessary to extend the option in all cases, and no other inference can be drawn from that case but that, before the time fixed has expired, notice must be given to the other party, and what that notice must contain. In extending the option under that case this notice must be given whether the original agreement between the parties provided for an indefinite extension or for a term of years, the intention being that the parties might have a fixed, definite, and determined time and know exactly where they were and what to rely upon in making their arrangements as to how to use the premises. To hold otherwise would allow the purchasers of the timber to play with the owner of the premises as a cat plays with a mouse.

We have in this case an effort to draw a distinction between the case at bar because it is for a term of years in the agreement and in the Minshew case for an indefinite extension. The last case laid down in no uncertain terms what should be done to legally extend the option, and the Court must sustain the exceptions herein or recede from the ruling in that case. Any decision of this Court that lays down the law that affects interests is attacked in every conceivable way, openly and insidiously and in every case afterwards an effort made to induce the Court to overrule its decision or modify the same.

The Court having with care and deliberation decided what the law in such cases is, and laid down the rule for the guidance of the public, I am in favor of adhering to that

rule, and not being drawn from it by the finespun differentiation of the facts in the cases.

The judgment should be reversed.

MR. JUSTICE GAGE concurs with MR. JUSTICE WATTS.