11896

MONTAGUE CORPORATION v. E. B. BURTON LUMBER
COMPANY *ET AL.*

(134 S. E., 147)

1. TIME.—Period provided in timber deed for cutting and removing timber is determined by excluding first, and including last, day.

2. LOGS AND LOGGING.—Grantee, to obtain benefit of option in timber deed for extended period to cut and remove timber, must give notice and make tender before expiration of original deed.

3. LOGS AND LOGGING.—Where grantee in timber deed was prevented from making tender for extension of time before expiration of deed by acts of grantor, tender was excused.

4. TENDER.—Tender prevented through contrivance of person to whom it should be made will be excused or considered equivalent to tender.

5. LOGS AND LOGGING.—Proposed extension of 15 years of timber deed, allowing 10 years for removal of timber, *held* not unreasonable.

Before SHIPP, J., Charleston, January, 1924.   Affirmed.

Action by the Montague Corporation against the E. P. Burton Lumber Company and another.   Judgment for plaintiff, and defendants appeal.

*Messrs. Hagood, Rivers & Young and J. N. Nathans,* for appellants, cite: *Option not exercised within time limit ceases:* 127 S. E., 267; 111 S. C., 97; 107 S. C., 147; 102 S. C., 289; 98 S. C., 8; 90 S. C., 126. *Same; case contra:* 264 F., 304. *Federal Court decision not binding on State Court:* 98 S. C., 476. *Legal holiday treated as Sunday for certain purposes:* Civ. Code, 1922, Sec. 5720; Civ. Code, 1902, Secs. 3098 and 5718. *Legal holidays treated as dies non only for purposes specified by statute:* 57 S. C., 44; 62 N. E., 356; 57 N. E., 92; 225 S. W., 575; 78 S. E., 140; 37 A., 222; 17 A., 145; 30 Fed. Cas., 641. *Extension of lease dependent on condition precedent fails on failure of condition:* 225 S. W., 575; 144 U. S., 394; 36 L. Ed., 478; *Case distinguished:* 97 S. C., 247. *Option for extension of*

*lease implies reasonable extension:* 98 S. C., 8; 89 S. C., 328; 264 F., 308. *Option to extend lease terminates at end of original term:* 111 S. C., 97; 107 S. C., 147; 102 S. C., 289; 98 S. C., 8. *Specific performance not allowed to seller speculating on his contract:* 123 S. C., 59; 119 S. C., 78; 114 S. C., 245. *Deed granting timber of certain size speaks as of date of deed:* 80 S. C., 106; 79 S. C., 166. *Granting part of deed not extended by subsequent clauses:* 79 S. C., 166. *Tender of rent once refused does not excuse tender for subsequent years on year to year contract:* 111 S. C., 97; 102 S. C., 289; 98 S. C., 8. *Duty of debtor to seek out creditor to make tender:* 82 S. C., 232.

*Messrs. Legare Walker* and *L. D. Lide,* for respondent, cite: *Notice and tender properly made:* 97 S. C., 247. *Repeated tenders not necessary after refusal:* 229 Fed., 652. *Extension of timber deed for one year did not prevent extension through subsequent years:* 107 S. C., 147; 96 S. E., 717; 229 F., 652. *In computation of time first day to be excluded; last day included:* 107 S. C., 147; 38 S. C., 425; 6 S. C., 390; 44 S. C. L., 395; 39 S. C. L., 305; 31 S. C. L., 95; 17 S. C. L., 611; 10 S. C. L., 505; 18 Wall., 112; 2 Wall., 177; 15 L. R. A. (N. S. ), 686; 49 L. R. A., 193, note; 38 L. R. A. (N. S.), 1160, note; 12 L. R. A., 772, note; 11 L. R. A., 724, note; 6 L. R. A., 541, note; 5 L. R. A., 844; 14 A. & E. Enc. of Law, 2nd Ed., 553; 28 A. & E. Enc. of Law, 2nd Ed., 21 and 211; Anderson's Law Dictionary, 41 and 481; 38 Cyc., 317. Code. Civ. Pro., 1922, Sec. 759; U. S. Comp. Stat., 1918, Sec. 9615. *Same: rule relaxed where equity demands it:* 44 S. C. L., 395; 39 S. C. L., 299; 31 S. C. L., 95; 17 S. C. L., 611; 10 S. C. L., 505; 147 U. S., 640; 104 U. S., 469; 94 U. S., 553; 59 U. S., 158; 25 U. S., 511; 13 U. S., 119; 2 Wall., 177; 32 C. C. A., 436; 89 F., 941; 61 U. S. App., 617; 15 L. R. A. (N. S.), 686; 49 L. R. A., 193; 11 L. R. A., 700; 6 L. R. A., 541; 264 F., 308. *"Dies non juridicus" refers to judicial*

*matters only:* 16 S. C., 593; 15 S. C., 110.  *July 4th declared a legal holiday:* Civ. Code, 1922, Sec. 5718.  *Acts not illegal because performed on legal holiday:* 57 S. C., 45.  *When date of performance of contract falls on legal holidays, performance the following day suffices:* 23 How., 28; 16 L. Ed., 412.  *Plaintiff entitled to any extension of deed desired:* 127 S. E., 267; 97 S. C., 247; 92 S. E., 271; 264 F., 308; 229 F., 652; 70 S. E., 672; 3 British Ruling Cases, 901.  *Cases distinguished:* 123 S. C., 59; 120 S. C., 276; 119 D. C., 78; 114 S. C., 245; 102 S. C., 7; 80 S. C., 106; 79 S. C., 166.

January 11, 1926.

The opinion of the Court was rendered by Mr. Justice Cothran.

The action is for the specific performance of a contract entered into between the Montague Corporation and the E. P. Burton Lumber Company, dated December 28, 1920, whereby the Montague Corporation agreed, upon certain terms, to sell to the Burton Company the timber rights in certain lands.  The Burton Company questioned the ability of the Montague Corporation to convey a good title, expressing its willingness, however, to comply if this could be done.  The owner of the fee, J. J. Pringle Smith, was made a party to the suit.  He contends that the contract under which the Montague Corporation claimed has been forfeited for reasons which will be explained.  The contest, therefore, is really between the Montague Corporation and J. J. Pringle Smith.

The facts of the case are as follows:

The land in question belonged to one Elizabeth Cordrey.  On July 4, 1902, she conveyed to one R. P. Tucker, "all the timber of every kind and description, both standing and fallen, of twelve (12) inches stump diameter and upwards," upon the two tracts, containing, in the aggregate, 534 acres,

for the sum of $468.50. The deed contained the following exceptions:

"Exception being made to the following described timber which is not conveyed in this deed, to wit, all timber less than twelve inches stump diameter at the time of cutting."

The deed also contained the following clause:

"That the said second party, his heirs or assigns, shall have and the same is hereby granted to him or them the period of ten (10) years, beginning from the date hereof, in which to cut and remove the said timber from the said land, and that in case the said timber is not cut and removed before the expiration of said period then that the said second party, his heirs or assigns, shall have such additional time therefor as he or they may desire, but in the last mentioned event the said second party, his heirs or assigns, shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of 6 per cent. per annum."

By successive conveyances, the details of which need not be enumerated, the title to the timber rights became vested in Freeman Farr, Oneida Timber Company, United Timber Company, and the plaintiff, Montague Corporation. By similar conveyances, the fee-simple title to the two tracts of land passed from Elizabeth Cordrey to the defendant J. J. Pringle Smith, the present owner.

The first period of 10 years provided for in the deed for cutting and removing the timber, "beginning from the date hereof" (July 4, 1902), expired at midnight on July 4, 1912, under the familiar rule of excluding the first, and including the last day. *State v. Elson,* 77 Ohio St., 489; 83 N. E., 904; 15 L. R. A. (N. S.), 686. *Sheets v. Selden,* 2 Wall., 177; 17 L. Ed., 822. *Best v. Doe,* 18 Wall., 112; 21 L. Ed., 805. *Lorent v. Ins. Co.,* 1 Nott. & McC., 505. *Williams v. Farrow,* 1 Bailey, 611; 21 Am. Dec., 492. *Gray v. Lumber*

*Co.,* 102 S. C., 289; 86 S. E., 640; and the innumerable case cited in the respondent's argument.

Under the decisions of this Court, notably the case of *Tuxbury Lumber Co. v. Byrd,* 131 S. C., 32; 127 S. E., 267 (where the former decisions are reviewed), in order to obtain the benefit of the option provided for in the deed for an extended period within which to cut and remove the timber, the grantee of the right must, before the expiration of the original period, give to the grantor notice of his desired extension, and pay or tender the agreed yearly interest in advance.

It appears that, under the peculiar wording of the extension provision, "shall, during the extended period, pay interest on the original purchase price above mentioned, year by year, in advance, at the rate of 6 per cent. per annum," the grantee would have secured the extension by giving notice of his desire before the expiration of the original 10-year period, and paying the interest on the first day of the extended period, which certainly would answer the requirment of payment in advance.

But passing this question, and assuming that the grantee was obliged, not only to give notice of his desire, but to pay or tender the first year's interest before the expiration of the 10-year period, the grantee complied with both requirments, and was entitled to the extension.

It appears that, just before the expiration of the original 10-year period (July 4, 1912), the Oneida Timber Company, which at that time owned the timber rights under the original Cordrey-Tucker deed, was anxious to avail itself of the extension option. A written notice of its desire was prepared and mailed to its attorney, Legare Walker, Esq., at Summerville, fixing the desired extension at 15 years from July 4, 1912, the time at which it correctly considered as marking the expiration of the 10-year period. For some unexplained reason this notice was dated July 5,

1912. It appears, however, from the testimony of Mr. Walker, a most reputable attorney of this Court, that on July 3, 1912, he called Mr. Smith up over long distance telephone, and informed him that the Oneida Company wished to make a formal tender in regard to the Cordrey land, and asked him if he could meet Mr. McCants, a representative of the company, for that purpose on the following day, July 4th. He replied that he would be in his office from 10 to 12 o'clock on the morning of July 4th. Mr. Walker then delivered to McCants the notice and the cash with which to make the tender, and directed him to go to Charleston to meet the engagement with Smith, above referred to, for the purpose indicated. Later in the day of July 4th Mr. Walker had a report from Mr. McCants, and in consequence directed him to meet every train coming into Charleston on which he might expect to find Mr. Smith. After a second report from McCants, Walker instructed him to find Smith, if possible, on the 5th. On that day he again failed to find Smith, and made a tender to a clerk in Smith's office, and attempted to do the same to Judge Smith, father of Mr. Smith, who declined to have anything to do with the matter. Notwithstanding the positive and circumstantial testimony of Mr. Walker, Mr. Smith entered no denial of it, but sat mute.

It appears that the company did all in its power to comply with the requirements of the deed in reference to the extension, and was prevented from strictly complying by the deliberate purpose of Smith to break his engagement with Walker and to evade the service of the written notice and the tender of the interest in advance before the expiration of the 10-year period. The law upon this subject is clear and just.

In 26 R. C. L., 624, it is said:

"And, if a tender is prevented through the contrivance of the person to whom it should be made, it will be

excused or be considered equivalent to a tender. Tender is not necessary when the creditor absents himself or avoids the debtor in order to defeat it"—citing *Barney v. Bliss,* 1 D. Chip. (Vt.), 3999; 12 Am. Dec., 696. *Borden v. Borden,* 5 Mass., 67; 4 Am. Dec., 32. *Noyes v. Clark,* 7 Paige Ch. (N. Y.), 179; 32 Am. Dec., 620. *Schaeffer v. Coldren,* 237 Pa., 77; 85 A., 98; Ann. Cas., 1914-B, 175; notes, 12 Am. Dec., 696; 77 Am. Dec., 471; 86 Am. Dec., 521; 6 Eng. Rul. Ca., 596.

In 38 Cyc., 135, it is said:

"A tender is waived when the tenderee * * * in any way obstructs or prevents a tender."

In *Borden v. Borden,* 5 Mass., 67; 4 Am. Dec., 32, it is held (quoting from syllabus):

"Where a party should deliver a deed on a certain day, and at the day was ready with the deed, and would have tendered it, but for the evasion of the other party, it was held equivalent to a tender."

In *Noyes v. Clark,* 7 Paige Ch. (N. Y.), 179; 32 Am. Dec., 620, in an opinion by Chancellor Walworth, it is said:

"A Court of equity, however, will not permit the mortgagee, or his assignee, to take an unconscientious advantage of the mortgagor who is willing to pay at the time prescribed, but who is unable to do so in consequence of the act of the other party * * * by depriving him of the power of making the payment at the time prescribed."

In *Schaeffer v. Coldren,* 237 Pa., 84; 85 A., 100, Ann. Cas., 1914-B, 177, it is held:

"It has been frequently held that acts insufficient in themselves to make a complete tender may operate as proof of readiness to perform, so as to protect the rights of a party under a contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the tenderer."

"Where a person intentionally evades a tender when the other party is ready at the place and time, and with the proper * * * amount, the act of the latter is equivalent to a tender."

Note to *Moynahan v. Moore* (Mich.), 77 Am. Dec., 486.

"If the tender is prevented through the contrivance of the party to whom it should be made, it will be excused."

Note to *Behaly v. Hatch* (Mich.), 12 Am. Dec., 571.

In *Southworth v. Smith*, 7 Cush. (61 Mass.), 391, it is held (quoting syllabus):

"Where a party designedly absents himself from home, for the fraudulent purpose of avoiding a tender, he cannot object that no tender was made."

"The absence of a party to whom tender should be made excuses it." *Lehman, Durr & Co, v. Collins*, 69 Ala., 127.

In *Gilmore v. Holt* Pick. (21 Mass), 258, the Court says (quoting syllabus):

"A person to whom money was due having designedly evaded a tender * * * this is a sufficient excuse for making no tender."

It is suggested that the period of proposed extension is unreasonable. But upon this point the appellants are met with the decision of this Court in the case of *Beaufort County Lumber Co. v. Johnson*, 107 S. C., 147; 92 S. E., 271, where the Court says:

"In the Prettyman Case [97 S. C., 247; 81 S. E., 484] it was held that, where a timber deed gave to the grantee ten years in which to cut and remove the timber, and provided that, in case the timber was not cut and removed before the expiration of such period, the grantor should have such additional time as it might desire, but that in such event it should, during such extension period, pay interest on the original purchase price annually in advance, the right to an extension was not dependent upon the condition that the grantee should commence the cutting and removal of the

timber within the first ten years, and that under such deed the grantee was entitled to such extension of time for cutting and removing the timber as it desired, and not merely to a reasonable time, since the deed .was unambiguous and express."

The judgment of this Court is that judgment of the Circuit Court be affirmed, and that the case be remanded to that Court for such further proceedings as are consistent with the foregoing conclusions.

Mr. Justice Marion and Mr. Acting Associate Justice R. O. Purdy concur.

Mr. Justices Gary and Watts dissent.

Mr. Acting Associate Justice R. O. Purdy: I concur in the result of the opinion of Mr. Justice Cothran; but I do not thereby assent to the suggestion of his Honor, Judge Shipp, that a tender could have been postponed, in the first instance, beyond July 4, 1912; agreeing with him, however, that the party in interest did all that was required to be done to preserve its rights.

Mr. Justice Watts: This is an appeal from a decree of his Honor, Judge Shipp, for specific performance of a contract for the purchase of timber. The exceptions, twelve in number, raise the questions:

"(1) That there is no competent testimony of any tender prior to the year 1915, to which tender Mr. Cone testified.

"(2) That, under the terms of the deed and decisions of the Supreme Court of South Carolina, a tender to be good to extend a period for cutting under the deed in this case would have to be made on the 3d day of July, 1912, and thereafter each year.

"(3) That, should the Court find that the tender would have been good if made on the 4th of July, the day after the expiration of the 10-year period, the owner of the timber desiring the extension would not have the privilege of making the tender on the 5th of July or thereafter, on the

ground that the 4th was a legal holiday.

"(4) That a period of 15 years was not a reasonable extension, and the Oneida Timber Company had no right to demand such a long period of years.

"(5) That the attempt to hold the timber after the period of 10 years was purely speculative, and a decree for specific performance should not be granted.

"(6) That in no event did the deed in question convey any timber except such as was 12 inches in diameter at the date of the deed."

The deed in the case was dated July 4, 1902, and was for 10 years, to cut and remove the timber, and, in case the timber was not cut and removed, an additional time was given as party might desire, and party of second part "shall during the extended period pay interest on the original purchase price above mentioned, year by year in advance." So one of the questions is, when was the last day on which the purchaser could exercise his option?

In the case of *Hill v. E. P. Burton Lumber Co.,* 90 S. C., 176; 72 S. E., 1085, this Court decided this question and uses the following language:

"As the 10-year limit for removal of timber under the above deed of June 29, 1899, expired June 28, 1909, it is clear that such deed affords no warrant for the acts of alleged trepass charged and admitted to have been committed on January 8, 1910."

See, also *Tuxbury Lumber Co. v. Byrd et al.,* 131 S .C., 32; 127 S. E., 267, filed the 20th of March, 1925.

In the case of *Gary v. Lumber Co.,* 102 S. C., 289; 86 S. E., 640—

"The right * * * was of a terminable nature, and was terminated by the failure to begin cutting the timber within a reasonable time; that to obtain the benefit of an option for an extension of the time the grantee must, before the time expires, pay or tender, yearly in advance, the agreed

interest on the purchase price, according to the terms of the contract, and this because, after a reasonable time has elapsed, and the right has terminated, it cannot be revived by a mere offer to comply with the option for an extension."

In *Beaufort Lumber Co. v. Johnson,* 107 S. C.; 147; 92 S. E., 271, the deed in question was dated on February 19, 1903. The decree of the Circuit Court says:

"The calendar year, therefore, contemplated by the parties began on February 19, 1914, and ended on February 19, 1915. Therefore any payment of money *before* February 19, 1915, or a tender thereof was in compliance with the contract." (Italics ours.)

The Supreme Court (page 159 [92 S. E., 211]) affirmed that portion of the decree for the reasons therein stated.

In *Minshew v. Lumber Co.,* 98 S. C., 8, at page 21; 81 S. E., 1027; 1032, Mr. Justice Watts, delivering the opinion of the Court, says:

"There is no question that, if a party desires to exercise his right to extend an option which he has, beyond the fixed time he has acquired, *before his time expires,* if he desires to exercise his option, he must tender and pay the amount agreed upon *in advance,* and serve notice that he will exercise his option for the period agreed upon, and will each year in advance pay the amount agreed upon. This payment must be unqualified and in strict compliance with the agreement of the parties. The payment must be unconditional and in advance." (Italics ours.)

In the case of *Bethea v. Beaufort County Lumber Company,* 111 S. C., 97; 96 S. E., 717, the timber deed was made February 19, 1903. The Court said (page 103 [96 S. E., 718]):

"By the terms of the timber contract before referred to, the timber purchaser might have paid to the landowner before February 19, 1913, one or two or three or up to ten years' interest on the purchase price of the timber and there-

by secure an extension of the right of cut for such number
of years as were paid for; and the option to pay lay with
the timber man. If he offered to pay and thereby to get the
extension, the landowner had no choice to decline payment.
But if the right to cut after February 19, 1913, was lost in
any one year, of course, all right was gone, and the right
to cut in extension depends upon 'payment of interest' to
the landowner."

Under the deed, tender or payment was to be made so
as to exercise the option by July 4, 1912. The whole testi-
mony shows that no tender was made in any year prior to
July 5th, except in two cases when July 5th was on Sunday,
when they were dated on July 6th. There is a great
difference between Sunday and a legal holiday both at Com-
mon Law and by Statute. A legal holiday is a creation of
Statute, and the limitations of what can or cannot be done,
or can or cannot be compelled to be done, is to be found in
the Act of Legislature. The Statute is very explicit as
to Charleston County, where the land in question lies, where
Smith resides, where the tenders were attempted to be made,
and where the action is brought:

Section 5720, vol. 3, Code of 1922:

"In Charleston and Richland Counties, the holidays
mentioned in the last preceding Section, and any and every
other day which may at any time hereafter be made a public
holiday by law, * * * shall for all purposes whatsoever,
as regard the presenting for payment or acceptance, and
of the protesting and giving notice of the dishonour of
bills of exchange, bank checks and promissory notes made
after the passage of this Section, be treated and considered
as the first day of the week, commonly called Sunday, and
as public holidays and half holidays; and all such bills,
checks and notes, otherwise presentable for acceptance or
payment on such public holidays, shall be presentable for

acceptance or payment on the secular or business day next succeeding such holiday," etc.

By reference to the Code of 1902, Vol. 1, § 3095, it will be seen that the holidays referred to are those set out in Section 5718, which includes the 4th of July.

Therefore, except for presentation or acceptance of commercial or bank paper, the 4th of July is as any other day. This has been recognized by this Court in *Mitchell v. Bates,* 57 S. C., 44, 52; 35 S. E., 420, 423:

"The third ground of appeal presents the question whether the fact that the motion for a new trial was made on the 4th of July—a legal holiday—rendered the same illegal and void. The Statute declaring the 4th of July a legal holiday does not forbid the taking of any step in a legal proceeding on that day; and, in the absence of any such statutory provision, we are not prepared to hold that any step taken in a legal proceeding on a legal holiday, such as the filing of a paper in a pending case, would be either illegal or void, for it was held otherwise in *Hiller v. English,* 4 Strob., 486."

We do not find the exact question presented decided by this Court, but we find it has been pointblank decided in other jurisdictions.

*Page v. Shainwald,* 169 N. Y., 246; 62 N. E., 356; 57 L. R. A., 173, a New York case, is exactly in point. Chief Justice Parker, delivering the opinion of the Court, says:

"The legal effect of the agreement between the plaintiff and the defendant was to require the defendant, if requested so to do by the plaintiff on the 1st day of January, 1898, to take plaintiff's stock in the Hoffman Machine Company at the price named therein. The plaintiff failed to tender his stock and make the request on the day named, but did so on the 3d of January. As the 1st day of January was a holiday, and the 2d came on Sunday, the plaintiff insists that his tender and request were in time. But the difficulty

with his contention is that legal holidays have not been placed on the same basis as Sunday by the Statute. Indeed, in only two respects has the Legislature attempted to interfere with the ordinary course of business, whether public or private, on a holiday other than Sunday. The first Act provides that a negotiable instrument maturing on a holiday is payable on the next succeeding business day (Laws 1887, c. 289), and the second that holidays shall be considered as Sunday for all purposes whatsoever, as regards the transaction of business in the public offices of the State or of the Counties of the State. Laws 1897, c. 614, § 1. If the Legislature had omitted the limitation of the preceding Statute to the transaction of business in the public offices of the State or Counties of the State, thus providing that holidays should be considered as Sunday for all purposes whatsoever, the plaintiff's contention would be well founded. But in the present state of the Statutes we are of the opinion that upon holidays other than Sunday all transactions may be carried on as on any other day, with the exceptions above noted. And so we said, in effect, in *Walton v. Stafford,* 162 N. Y., 558; 57 N. E., 92. It is undoubtedly true that the state of the law on this subject is likely to prove embarrassing to many, such, for instance, as those who find themselves obliged to tender a considerable sum of money on a day which is just enough of a holiday to allow the banks to close, from which he must obtain the money to make a tender, but not enough of a holiday to avoid the necessity of a tender if he would not breach his contract. * * * The doctrine of waiver, often applied in cases of forfeiture, has no place in this discussion, for there was nothing to forfeit January 3d, when the plaintiff tendered the stock. The contract upon which he was apparently relying was dead, and had been for two days, and, whether he realized it or not, the plaintiff was in fact a suitor for the enjoyment of a second option. The defendant refused to accord it to

him, and there the matter must end so far as the Courts are concerned, for it was the defendant's legal right to refuse."

The case of *Walton v. Stafford,* 162 N. Y., 558; 57 N. E., 92, above cited, decided that, if rent is payable January 1st (a legal holiday), it must be paid on that day, or the lease is terminated.

The case of *McLaughlin v. Brock* (Tex. Civ. App.), 225 S. W., p. 575, is merely on all fours with the present case. There it was a question of an oil lease or contract which should remain in force for five years, or as long thereafter as oil or gas was provided from the land, but if no well were commenced on the land on or before the 1st of January, 1919, the lease should terminate as to both parties, unless the lessee, on or before that date, should tender to the lessor, or put to his credit in bank the sum of $25, which would extend the lease for three months and in like manner from time to time. The lessee failed to make the payment or tender on the 1st of January, but did make tender and deposit on 2d of January. The Court held the option had not been exercised, and had expired, saying:

"And we are of the opinion further that it could make no difference that defendant could not deposit the money in the bank on January 1, 1919, by reason of the fact that the bank was then closed on account of the day being a legal holiday. At all events, that fact did not prevent the defendant from paying or tendering the rental to the plaintiffs themselves on January 1, 1919. The authorities cited by appellant in support of his proposition that, by reason of the fact January 1st was a legal holiday, he had the right to pay the rental on the following day, relate only to promissory notes and insurance policies; in other words, to contracts to pay money which are absolute and unconditional and not to mere options to pay or not to pay, such as we have in the present suit."

To the same effect is the decision of the Georgia Courts, *Wood v. State,* 12 Ga. App., 651; 78 S. E., 140; the Maryland Court, *Handy v. Maddox,* 85 Md., 547; 37 A., 222. New Jersey, *Glenn v. Eddy,* 51 N. J. Law, 255; 17 A., 145; 14 Am. St. Rep., 684.

Ten years was given under the deed to cut and remove the timber. They want an extension of 15 years, 5 more than the original time. That is unreasonable and absurd. If they can take 15, why not 25 or 50, and practically confiscate the land? There is now on the land 1,692,000 feet of timber, and it is shown that the whole timber can be cut and removed in less than 200 working days. They had under the timber deed at least 3,000 days to clean up and remove what could have been done in less than 300 working days. They want 4,500 more in tying up this property.

I do not think tender was made in time to have the extension, and under our decisions notice was not proper to get the extension. We are not bound by the decision of other Courts. To allow the extension claimed would be practically to confiscate the appellant's land. He would be kept out of his land, have taxes to pay, and the respondent would get the benefit. The respondent could have given notice; sent money by mail and registered letter to the appellant. Tender was not required to be personally made to the appellant.

A. Court of equity will not grant a decree for specific performance as a matter of right. It rests in its discretion. This is not a case in any view that specific performance should be decree. I think that the judgment of the Circuit Court should be reversed, and that the judgment of this Court should be that the judgment of the Circuit Court be reversed.

MR. CHIEF JUSTICE GARY concurs.