## 10089

### BETHEA v. BEAUFORT COUNTY LUMBER CO.

#### (96 S. E. 717.)

1. LOGS AND LOGGING—EXTENSIONS—NOTICE.—A ladowner is not entitled to notice, in advance of actual payment, that interest money as consideration for extension of timber cutting privilege will be paid.

2. LOGS AND LOGGING—EXTENSION OF TIME—NOTICE—CONTRACT—CONSTRUCTION.—Contract granting right to cut timber *held* to contemplate more than one period of extension of privilege by payment of interest money.

3. LOGS AND LOGGING—EXTENSIONS—NOTICE—CONTRACT—CONSTRUCTION. —Under contract granting right to cut timber entitling purchaser at his option to an extension of time on payment of annual interest money, if he offered to pay the interest, the landowner had no choice to decline payment.

4. LOGS AND LOGGING—EXTENSIONS—BURDEN OF PROOF.—Under contract granting right to cut timber entitling purchaser at his option to an extension of time on payment of annual interest money, the purchaser, after expiration of the original term, had the burden of proving payment of the interest.

5. LOGS AND LOGGING—EXTENSIONS—PAYMENT—EVIDENCE.—Where logging contract provided for extension merely on act of paying interest money, payment need not be evidenced in any particular form, nor acknowledged under seal.

6. HUSBAND AND WIFE — HUSBAND AS AGENT — RATIFICATION. — Where wife, with knowledge that the husband had acted for her in two instances of extension of timber contract, failed to repudiate his action for one year in one instance, and two years in the other, she ratified his acts.

7—111

7. HUSBAND AND WIFE—HUSBAND AS AGENT—RATIFICATION—PRESUMPTIONS.—Where there is a peculiar relationship betwixt the principal and agent, like that of husband and wife, presumption of ratification arising from silence becomes stronger.

Before SHIPP, J., Dillon, March term, 1917.   Affirmed.

Action by Martha R. Bethea against the Beaufort County Lumber Company.   Judgment dismissing the complaint, and plaintiff appeals.

The receipts referred to are as follows:

"$84.00.   November 4, 1912.   Received of the Beaufort County Lumber Company of North Carolina the sum of eighty-four dollars the same being the first annual payment for extension of time in which to cut and move certain timber in accordance with the terms of a certain deed made by Lewis S. Bethea and Martha R. Bethea to Zadock H. Powell and Cornelius Thomas on Feb. 19, and recorded in Book DDD, pages 25, 26, 27, 28, 29 of the registry of Marion county, in the State of South Carolina.   This being the first payment and is intended to secure an extension for one year from expiration of original ten years period and being the first of the annual extensions not to exceed a period of ten years should the said lumber company require that period. L. S. Bethea (Seal.)   J. J. Bethea (Seal.)   Witness: J. H. Manning."

"84.00.   Dec. 16, 1913.   Received of the Beaufort County Lumber Company of North Carolina the sum of eighty-four dollars the same being the second annual payment for extension of time in which to cut and remove certain timber in accordance with the terms of a certain deed made by Lewis S. Bethea and Martha R. Bethea to Zadock H. Powell and Cornelius Thomas on Feb. 19 and recorded in Book DDD, pages 25, 26, 27, 28, 29 of the registry of Marion county, in the State of South Carolina.   This being the second payment and is intended to secure an extension for one year from the 19th day of Feby., 1914, to 19 day of February, 1915, same

being the second annual extension not to exceed ten years should the said lumber company require that period.    L. S. Bethea (Seal.)    Witness: L. E. Whaley."

*Mr. J. A. Mace,* for appellant, submits: *That upon the failure of grantees to comply strictly with the terms of the extension clauses in timber contracts, such as the one involved in this case, all their rights under the contract are lost and the contract ended or abandoned:* 89 S. C. 328; 90 S. C. 178; 95 S. C. 352; 97 S. C. 247; 98 S. C. 8; 102 S. C. 287; 107 S. C. 147.    *As to the instruments changing the original contract and purporting to be signed in behalf of appellant:* 52 S. C. 133; 40 S. C. 154; 107 S. C. 147; 98 S. C. 22; 81 S. E. 1207.

*Mr. Joe P. Lane,* also for appellant, cites: *As to the instruments purporting to change the original contract:* 9 Cyc. 596-599; 59 S. C. 563; 31 Cyc. 1233, 1231, 1232; 52 S. C. 152; 2 S. C. 430; 28 S. C. 361.    *L. S. Bethea had no authority to bind his wife, the appellant:* 31 Cyc. 1341, 1342, 1343, 1344; 2 Rich. L. 62; 75 S. C. 81; 105 S. C. 11; 106 S. C. 483; 39 S. C. 534; 2 Rich. L. 43; 31 Cyc. 1251, 1242, 1243, 1245, 1246.    *The mere fact that appellant has knowledge that her husband had signed receipts in his individual capacity, and had received money for her timber, could not be held to estop her from denying that he acted as her agent:* 1256 (11); 31 Cyc. 1241, 1242, 1243, 1244; 31 Cyc. 1251, 1252, 1253 (and notes); 31 Cyc. 1261, and notes; 31 Cyc. 1243, 1244, and notes.    *Persons who are misled as to the agency, through their own fault or carelessness, cannot invoke the aid of estoppel:* 74 Ill. App. 309, cited at p. 1244, 31 Cyc.; 9 Jur. (N. S.) 829; cited at p. 1244, 31 Cyc.

*Messrs. Gibson & Muller,* for respondent, submit: *The questions involved here are identical with those determined in 107 S. C., p. 147.    As to the receipts not being instruments required to carry a seal:* 78 S. C. 302; Paige on Con-

tracts, vol. II, 870 (Del.); 56 Atl. 672 (Miss.); 31 S. W. 938; 7 Colorado 483; 31 Cyc. 1232, and numerous authorities there cited.

September 16, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

This action involves the construction of a timber contract executed on the one side by Lewis Bethea and his wife, Martha, and on the other side by Powell and Thomas, who are the assignors of the defendant. There also comes in issue the effect of what may be called two extension receipts for money which Lewis made and gave to the defendant. This action is by Martha, the wife; it is in effect to annul the contract; it was commenced September, 1915. The Circuit Court dismissed the complaint in a *pro forma* order, and the plaintiff has appealed.

The exceptions are multifarious; they are 11 in number, though there are really but 2 issues to be decided.

The timber contract was made February 19, 1903. The right under it to cut was limited to ten years thereafter; but by it the right to cut might be extended on terms named for "such additional period as may be desired, not exceeding ten years." The particular words of the contract which are involved are these:

"(1) The * * * parties of the second part (the conveyees) shall have the full term or period of ten years from the date hereof to cut and recover the said timber, (2) and upon payment of interest upon the purchase price hereinbefore stated ($1,400) at six per cent. per annum, (3) payable at the end of each calander year, (4) such additional period as may be desired not exceeding ten years."

The numerals and the words in parentheses are added.

The instrument, as before stated, was signed by L. S. Bethea and his wife, Martha, the plaintiff; and it conveyed the timber on 100 acres which belonged to the husband and 300 acres which belonged to the wife. The defendant, lumber company, as before stated, bought the right of the first conveyee. In November, 1912, the lumber company paid to the husband $84, as 6 per cent. interest for one year on $1,400, the purchase price of the timber which Lewis and Martha had conveyed. And in December, 1913, the lumber company so paid to the husband a like sum for another year, and on February 17, 1915, the sum of $84, after having been tendered to the Betheas by the sheriff, was deposited in the office of the clerk for Dillon county and there remains; but of that act the plaintiff was not notified. The words of the receipts are set out in the answer, and, nothing appearing to the contrary, we assume that copy to be correct. Let the two receipts be reported. That first given was signed by Lewis Bethea and J. J. Bethea. The last named person had purchased the 100 acres of Lewis after the contract in issue was made and before the extension money was paid to him. That receipt second given is signed by Lewis alone; but it purports to have been given with the intention on Lewis' part to secure to the defendants an extension of time in which to cut of one year from February 19, 1914, to February 19, 1915, in accordance with the terms of the deed by Lewis and Martha to Powell and Thomas.

The respondent relies for affirmance on the case of *Beaufort Lumber Co. v. Johnson,* 107 S. C. 147, 92 S. E. 271. The Court held in that case that the landowner was not entitled to have from the timber owner, in advance of the payment of the extension money, formal and explicit notice that it was to be paid to secure an extension in time of the right to cut.

The writer of this opinion did not agree to that view; but the opinion settled that question and against the writer's

view, and it must control in the instant case.    Mr. Justice Fraser gave a limited concurrence in the Johnson case.    He put his opinion in part on a point not referred to in either the opinion of the Court or in the dissenting opinion of Mr. Justice Watts; and a point not in his view determinative of the case.    He held that the words of the timber contract before referred to did not give to the timber purchasers, after the expiration of the original period to cut, more than one other period; but he further held that Johnson was, under the circumstances of that case, estopped to so contend.

Averting now to that particular issue, we are of opinion that the words of the timber contract plainly include more than one period of extension.    The contractors agreed that, at the expiration of the original period in which to cut, (1) the payment of interest by the timber purchaser on the purchase price of the timber at the end of each year, (2) should give the timber purchaser such additional period as he might desire.    The specification that the payment should be made at the end of each year necessarily implies that the contractors did not limit the extension to one year after the original term had expired, but had in mind several payments, and therefore several extensions and several years and several periods.    But this conclusion does not determine the case.    The other issue in it arises out of the following allegation of the answer, to wit:

"That the original ten-year period expired on the 19th day of February, 1913, and before the expiration of such term this defendant, being informed and advised that the makers of said deed, to wit, the said Lewis S. Bethea and Martha R. Bethea, were agents for the other, paid and delivered to the said Lewis S. Bethea for himself and the said Martha R. Bethea the sum of $84, for which said sum the said Lewis. S. Bethea made, executed, and delivered to this defendant his receipt. * * * That on or about the 25th day of January, 1915, or before the second year of said exten-

sion period expired, this defendant offered to pay to the said
Lewis S. Bethea and Martha R. Bethea an additional sum of
$84, which was refused by them, and as a result of which on
the 13th day of February, 1915, this defendant, by S. V.
Lane, sheriff of Dillon county, made a legal tender of the
said sum of $84 to each of the said parties, and, upon the
same being refused, the said sum of $84 was deposited in
the office of the clerk of Court for Dillon county on Febru-
ary 17, 1915, as a continuing tender for the benefit of the
said plaintiff and her comaker of said deed, the said Lewis
S. Bethea, for which said sum the said clerk of Court duly
issued his receipt."

The first and second extension receipts before referred to
are now to be considered.

By the terms of the timber contract before referred to,
the timber purchaser might have paid to the landowner
before February 19, 1913, one or two or three or up to
ten years' interest on the purchase price of the timber
and thereby secure an extension of the right to cut
for such number of years as were so paid for; and the
option to pay lay with the timberman.    If he offered to pay
and thereby to get the extension, the landowner had no
choice to decline payment.    But if the right to cut after
February 19, 1913, was lost in any one year, of course, all
right was gone, and the right to cut in extension depends
upon "payment of interest" to the landowner.    If, there-
fore, the interest was not paid to Martha for the year 1913-
14 or for the year 1914-15, then the deposit with the sheriff
for 1915-16 was a vain act.

The defendant, of course, had the burden of proving the
payment of interest.    The only testimony it offered was the
two receipts before mentioned.    They were executed by
Lewis, and at that time he had no interest in the land
or in the timber on it.    The receipts do not purport
to be in the name of Martha, though they do purport

to have been given pursuant to the timber contract.    Standing alone, they afford no evidence of the payment of interest to Martha.

By the words of the timber contract the simple act of "payment of interest" operated to extend the right to cut. The right to cut for ten years was fixed by the timber contract formally executed.    That contract was not required to be extended by any other writing, but only by an act.    The payment of the interest money did not change the timber contract, but carried it out.    It was, therefore, not necessary that the payment of interest should be evidenced in any particular form, much less that it should be acknowledged under seal.

But the defendant relies upon the testimony of Lewis and Martha to prove that when Lewis received the payment of interest he did so as the agent of Martha, and that is the narrow issue to be decided.    Lewis testified that his wife did not tell him to receive the interest money, and that he paid no part of it to her, and that he did not tell the defendant that he was acting for his wife.    On cross-examination, he testified that he had been looking after her business relations and she did not object, and that he did not allow her to have anything to say about it.    This would not sufficiently prove that Lewis was agent for the wife when he took the interest money.    Martha testified, though, on the cross-examination, as follows:

"So far as the business part of the property is concerned, Mr. Bethea looks after it.    Mr. L. S. Bethea is my husband. He was my general agent for looking after this property, but I never told him to do so.    Mr. Bethea looked after making the original contract to sell the timber.    I know my husband's signature, but I do not think that is his signature.    I know that he was paid the sum of $84 in 1912, as extension

money.    I think he accepted it and used it.    I know he was paid the extension money in 1913, and accepted and used it."

On the redirect examination she testified thus:

"When you knew he received that money, did you know it was for your benefit?    A. I knew it was for the timber. Q. Did he say that they had paid it to him for you?    A. I do not know, but he said he received—I did not authorize him to receive it for me. * * * None of the money that was paid to Mr. Bethea was ever paid to me."

It is true that the admission by Martha that Lewis was her "general agent" does not constitute him such; that relationship is created by law and results from the proof of facts. There is perhaps no sufficient testimony to prove that Lewis was, in the inception of his taking the interest money, the agent of Martha thereabout.

But there is proof that she ratified his act, and a subsequent ratification is equal to a previous command.    The ratification consisted in the wife's knowledge that the husband had undertaken to act for her in two instances, and her failure, for two years in one instance and one year in the other instance, to repudiate his action.

It is true that, where no agency actually exists, the presumption of ratification arising from silence of the principal is less strong than it is where an agency does exist.    But where there is a peculiar relationship betwixt the principal and agent, like that of husband and wife, presumption of ratification arising from silence becomes stronger.    Story on Agency, sec. 256; Jones on Evidence, sec. 741; *Walker v. Walker*, 17 S. C. 338.

In the instant case, the wife admits that she knew her husband got the interest money and for an extension, and that he accepted and used it.    The wife's testimony beyond cavil concludes her present right.    It is plain that with full knowl-

edge of what her husband had done, and the effect of his doing it, she thereby ratified his act.    See 2 Corpus Juris, p. 467, *et seq.*

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY concurs.

MR. JUSTICE WATTS concurs in the result.

MR. JUSTICE HYDRICK.    I concur in the opinion of Mr. Justice Gage, except as to the sufficiency of the evidence that Bethea was the agent of his wife.    I think there was ample evidence of his agency, both from his testimony and from hers.    When it is shown, as it was in this case, that the husband attends to all the business affairs of the wife, with her knowledge and without dissent on her part, that is sufficient evidence upon which to predicate a finding that he was her agent; and when a wife testifies, as Mrs. Bethea did, that her husband was her general agent, I think that is sufficient evidence to prove the fact.    I, therefore, concur in the result.

MR. JUSTICE FRASER, *dissenting*.    I cannot concur in the opinion of the majority of the Court.    In the Johnson case, Mr. Justice Watts was of the opinion that a definite extension was required by the contract.    Mr. Justice Gage concurred in that opinion.    That was the opinion of Justice Fraser, but he thought that by a subsequent agreement, as set forth in the receipts, annual extension was agreed upon. That was a majority of the Court on that question.    There is no evidence that Mrs. Bethea consented to the substitution at the time.    If Mrs. Bethea ratified her agent's act in substituting annual extensions for one period, then she is bound.    Now, in order to hold that the principal is bound by ratification of the acts of the agent, the principal should have actual or constructive notice of what the agent has done or attempted to do.    I see no evidence that Mrs. Bethea knew of annual extensions for a period of ten years.    The extension may have been for two years, *i. e.*, the two years paid for.    It seems to me that, if ratification of the acts of

a husband can be inferred from doubtful circumstances, then the security of married women in the enjoyment of their separate property is destroyed. It would seriously disturb domestic relations and imperil the peace and good order of society if a married woman is required to follow up her husband and notify those with whom he deals that there is discord in the home, or notify the world of the disagreeable facts by a proceeding for injunction. If a married woman consents to a contract in reference to her separate property (which the law requires), indisputable evidence of that consent can be procured with ease and the utmost decorum. In the instant case, the rights of Mrs. Bethea are destroyed by the ratification of a written instrument that did not even purport to have been done in her name or by her consent, or by knowledge, actual or constructive, of the facts upon which the ratification is based.

For these reasons, I dissent.